```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Shane William Jenkins

    v.                                 Civil No. 18-cv-672-JD
                                         Opinion No. 2018 DNH 235

Nancy A. Berryhill,
Acting Commissioner
Social Security Administration


O R D E R

Shane William Jenkins seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits. In support, Jenkins contends that the Administrative Law Judge ("ALJ") erred in assessing his residual functional capacity which caused an erroneous conclusion that he is not disabled. The Acting Commissioner moves to affirm.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). Substantial evidence is "more than a

scintilla of evidence" but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). The court must affirm the ALJ's findings, even if the record could support a different conclusion, as long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## Background[1]

In his application, Jenkins claimed a disability onset date of March 1, 2015, when he was forty-four years old. Jenkins went to college for three years. He served in the army, with combat duty in Iraq. He previously has worked as a lead purification associate. He claimed disability due to post-traumatic stress disorder ("PTSD"), anxiety, depression, bulimia nervosa, and a back condition.

---

[1] Jenkins's statement of facts, which was prepared and filed by counsel, is a recitation of procedural events and provides no background information about his age, previous work and education, claimed disability, his treatment, or the medical opinions provided in his case. Therefore, the substantive background information is taken from the Acting Commissioner's Factual Statement, which Jenkins does not challenge.

Jenkins was treated for PTSD from January to March of 2016.[2] In February of 2016, Jenkins was assessed for PTSD at the VA Hospital in Northampton. The author of the assessment was Gary Harris, although the testing was administered by "Channing Harris, MA (Clinical Psychology Intern)" under the supervision of Emily Britton, Psy.D. and Michelle A. Mattison, Ph.D. Dr. Mattison co-signed the assessment.

In the assessment, Jenkins was diagnosed with PTSD and severe alcohol use disorder. The assessment states that Jenkins had severe, markedly elevated, impairment in social functioning. With reference to occupational functioning, Jenkins's PTSD was found to have moderate impact, with "definite impairment but many aspects of occupational/other important functioning still intact."

William Swinburne, Ph.D., completed a comprehensive psychological profile of Jenkins on October 11, 2016, on a referral from the Social Security Disability Determination Unit. The profile was based on his examination of Jenkins, along with a review of his adult function report and a discharge summary

---

[2] In his reply, Jenkins states that he was hospitalized at the "Northampton [Massachusetts] VA Hospital," from December 3, 2015, to January 7, 2016, and again from January 22, 2016, to March 4, 2016. The first admission appears to have been because of alcohol dependence syndrome, but he may also have been treated for PTSD.

from the VA Hospital in January of 2016. In the context of Jenkins's reaction to stress and his adaptation to work or work-like situations, Dr. Swinburne found the following:

> The claimant could tolerate mild disruptions that could be encountered in the average work scene such as being asked to fulfill another function. He could manage the expectation of providing adequate attendance. However, in a work-like situation, he can be expected to be very distrustful and on guard and possibly misinterpret people's actions or words. He is capable of angry explosions, which will be expressed primarily verbally. He will have difficulty working as a member of a team and will work best by himself. He could take supervision. He can be expected to stay focused on a task if working by himself and see the task through to completion.

Doc. 5-8, Admin. Rec. at 702.

Dr. Craig Stenslie, an agency consultative psychologist, completed a Mental Residual Functional Capacity Assessment on October 20, 2016. Dr. Stenslie found that Jenkins could adequately deal with instructions and changes in a low stress situation. He also found that Jenkins could maintain attention, sustain an ordinary routine, complete a normal work week, and work with others if that were only a small part of his job.

A hearing was held on October 26, 2017. Jenkins attended and testified at the hearing and was represented by an attorney who continues to represent him. Anthony James Paige, who is a clinical mental health counselor and who had worked with Jenkins for more than two years, also testified at the hearing.

Paige gave a detailed description of Jenkins's mental health issues and their negative effects on his ability to function, particularly in a work situation. Paige said that he thought Jenkins could present well and be hired for a job but would not be able to maintain employment because of his inability to tolerate coworkers' perceived inadequacies and his own inadequacies, which would cause a volatile situation.

A vocational expert also testified. For purposes of the vocational expert's opinion, the ALJ proposed a hypothetical claimant who

> could perform uncomplicated tasks defined as tasks that typically can be learned in 30 days or less; and would need an environment with only incidental contact with the general public and by that, I mean dealing with the public would not be part of job duties; he would also need an environment where work was performed in a generally solitary manner, but tandem tasks could be performed or tolerated up to 10 percent of the work day; in such a setting, the individual could otherwise collaborate with coworkers and supervisors on routine matters; in addition, the individual would need an environment without frequent changes, but could tolerate routine changes.

Admin. Rec. at 213. In response, the vocational expert stated that such a claimant could not return to the work that Jenkins had done previously but that there were jobs that existed that he could do. When limitations were added for a claimant who could not collaborate consistently with co-workers and supervisors or who would have angry outbursts on the job, the

vocational expert said that those limitations would preclude all work.

The ALJ issued her decision on November 28, 2017, finding at Step Five that Jenkins was not disabled.[3] In support, the ALJ found that Jenkins had severe impairments due to PTSD, bulimia nervosa, and a history of alcohol abuse in remission. She found that Jenkins had the residual functional capacity to work except that he was limited to uncomplicated tasks, to incidental contact with the public, and to solitary work. With those limitations, the ALJ found that Jenkins could tolerate "tandem tasks" for up to 10% of his workday and could collaborate with co-workers and supervisors on routine matters without frequent changes. Based on the vocational expert's identification of work a person could do with those limitations, the ALJ found that Jenkins was not disabled.

---

[3] In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520; Purdy, 2018 WL 1601791, at *1-*2. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing "evidence of specific jobs in the national economy that the applicant can still perform." Purdy, 2018 WL 1601791, at *2.

Jenkins requested review of that decision by the Appeals Council.  On February 20, 2018, after seeking review by the Appeals Council, Jenkins was hospitalized at the Veterans Affairs Medical Center of Western Massachusetts, for the effects of PTSD, Bulimia, and alcohol use disorder.  He was discharged on April 3, 2018.  Those records were submitted to the Appeals Council.  The Appeals Council denied review and explained that the recent medical records did not affect the disability decision because they did not relate to the period at issue, before November 28, 2017.

## Discussion

Jenkins moves to reverse the decision of the Acting Commissioner on the ground that the ALJ's residual functional capacity assessment is not supported by substantial evidence in the record.  In support, Jenkins cites notations and findings by mental health treatment providers that recount his own descriptions of his behavior and find him markedly limited in certain functional areas.  He also faults the ALJ for failing to acknowledge Dr. Swinburne's opinion about his limitations in handling a work situation, despite giving great weight to his opinion as a whole.

The Acting Commissioner moves to affirm the decision.  She points to evidence in the record that shows that Jenkins has

above average intelligence, was oriented and without signs of a thought disorder, and was able to function in a variety of ways, including attending AA meetings, veterans' events, and working out at a gym. She contends that the ALJ's residual functional capacity assessment adequately addressed Jenkins's limitations.

The residual functional capacity assessment is a finding of the most a claimant can do in a work setting despite his limitations caused by impairments. 20 C.F.R. § 404.1545(a)(1). An ALJ's assessment is reviewed to determine whether it is based on proper legal standards and is supported by substantial evidence. Nguyen, 172 F.3d at 35-36. An ALJ generally cannot interpret medical data in a claimant's record in functional terms. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). For that reason, an expert's functional capacity assessment, generally in the form of a medical opinion, is necessary to evaluate a claimant's work capacities in light of his impairments. Id.; see also Swain v. Berryhill, 2018 WL 5342714, at *5 (D.N.H. Oct. 29, 2018).

An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the

claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1).

Jenkins contends that the ALJ did not properly consider the treatment and opinion evidence that show the likelihood that he would have angry outbursts. In particular, Jenkins notes that Dr. Swinburne stated in his opinion that Jenkins was capable of angry explosions in a work setting and would have difficulty working as a member of a team. He contends that because the ALJ gave great weight to Dr. Swinburne's opinion, she necessarily adopted that finding too.

The ALJ did not explicitly address the issue of Jenkins's anger and the likelihood that he would have outbursts in a work environment.[4] The ALJ did give great weight to Dr. Swinburne's opinion but did not mention that part of the opinion that found Jenkins was capable of angry explosions at work. As such, the ALJ did not adequately explain Jenkins's functional capacity in relation to the issue of angry outbursts.

The ALJ gave significant weight to the opinion of state agency reviewing psychologist, Dr. Stenslie, which did not mention Jenkins's likelihood of having angry outbursts. The

---

[4] The vocational expert testified that someone who could not work in collaboration with others or would have angry outbursts at work would be precluded from all jobs.

9

ALJ, however, did not fully accept Dr. Stenslie's "ratings under the 'part B criteria'" because they were based on old criteria that had been changed as of January 17, 2017. It is not clear what part of Dr. Stenslie's opinion was affected and disregarded.

Although the ALJ's residual functional capacity assessment greatly restricts Jenkins's contact with the public and limits him to solitary work, he would still have to tolerate "tandem tasks" with co-workers for 10% of his work day and be able to collaborate with co-workers and supervisors on routine matters without frequent changes. Neither the ALJ nor the Acting Commissioner cited an opinion or combination of opinions in the record to support a correlation between the imposed restrictions and Jenkins's limitations. In other words, the record lacks evidence to show that the restrictions the ALJ imposed would allow Jenkins to collaborate with co-workers and supervisors and prevent him from having angry outbursts at work. Further, while Dr. Stenslie found that Jenkins could deal adequately with change, he limited that ability to low stress situations. That limitation is not in the ALJ's residual functional capacity.

Therefore, the record lacks substantial evidence to support the ALJ's residual functional capacity assessment. As a result, the vocational expert's opinion about available jobs, based on

10

an erroneous hypothetical, does not constitute substantial evidence to support the Acting Commissioner's burden at Step Five.  See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

## Conclusion

For the foregoing reasons, Jenkins's motion to reverse (document no. 6) is granted.  The Acting Commissioner's motion to affirm (document no. 8) is denied.

The Acting Commissioner's decision is reversed, and the case is remanded pursuant to sentence four of § 405(g).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 28, 2018

cc:  Stanley H. Robinson, Esq.
     Lisa G. Smoller, Esq.